**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

---

SECURITIES AND EXCHANGE
COMMISSION,

                              **Plaintiff,**

            **v.**

TASTY FRIES, INC., EDWARD C. KELLY, and
LOUIS M. KELLY,

                              **Defendants.**

---

**Civil Action No. __-____**

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

## SUMMARY

1.      This action involves a pattern of fraudulent and other improper conduct by defendants Tasty Fries, Inc. ("Tasty Fries" or "the company") and Edward C. Kelly ("Edward Kelly"), the company's President, Chairman and Chief Executive Officer, that included, among other things, improperly issuing Tasty Fries stock without proper authorization; issuing and filing with the Commission false and misleading financial statements; making false and misleading statements in press releases and Commission filings; and, together with Edward Kelly's son, defendant Louis M. Kelly ("Louis Kelly"), engaging in the unregistered sale of Tasty Fries securities.  Tasty Fries, aided and abetted by Edward Kelly, also committed reporting, record keeping and internal control violations.

2.      Between March 2001 and January 2005, Edward Kelly, on four occasions, improperly attempted to increase the number of authorized shares of Tasty Fries stock.  As a

result, since 2001, the company issued over 78 million more shares of common stock than its articles of incorporation authorized, and incorrectly accounted for its issuances of common stock in its financial statements. Since January 2002, all of the company's financial statements filed with its annual and periodic reports are materially misstated. The company's former auditor has declared that all of the financial statements included in the company's filings, beginning with those filed with its Form 10-KSB for the year-ended January 31, 2002, cannot be relied upon.

3.      Between 2002 and 2004, defendants Tasty Fries and Edward Kelly made materially false and misleading statements in press releases and in Commission filings relating to the development and production status of a French fry vending machine that Tasty Fries was developing.

4.      The company, aided and abetted by Edward Kelly, has failed to make filings with the Commission of required annual, quarterly and current reports; to make and keep books, records, and accounts that accurately and fairly reflect Tasty Fries' transactions and dispositions of Tasty Fries' assets; and to devise and maintain an adequate system of internal accounting controls.

5.      Tasty Fries, Edward Kelly, and defendant Louis Kelly also engaged in improper unregistered offers and sales of Tasty Fries common stock by compensating advisors and consultants with common stock in sales that the company did not effectively register. Tasty Fries used this stock to pay consultants and advisors who either did not provide bona fide services to Tasty Fries or provided promotional and investor relations services. In three such instances,

defendant Louis Kelly, an attorney licensed in Pennsylvania, authored the legal opinions that the company filed with its ineffective registration statements.

6.     Defendants Tasty Fries and Edward Kelly also engaged in improper unregistered sales of Tasty Fries common stock by engaging in so-called "gypsy swaps" in which they arranged for shareholders to sell purportedly nonrestricted Tasty Fries stock to others, in exchange for which Tasty Fries ultimately received all or some of the stock purchase price, and the selling shareholders received from the company new restricted shares, which sometimes included extra bonus shares provided as an inducement for the shareholder to sell their purportedly nonrestricted stock.

7.     By engaging in the conduct described in this Complaint, defendant Tasty Fries violated Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act"), [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)], Sections 10(b), 13(b)(2)(A), 13(b)(2)(B), and 15(d) of the Securities Exchange Act of 1934 ("Exchange Act"), [15 U.S.C. §§78j(b), 78m(b)(2)(A), 78m(b)(2)(B), and 78o(d)], and Rules 10b-5, 15d-1, 15d-11, 15d-13, and 12b-20, promulgated thereunder [17 C.F.R. §§240.10b-5, 240.15d-1, 240.15d-11, 240.15d-13, and 240.12b-20].

8.     By engaging in the conduct described in this Complaint, defendant Edward Kelly violated Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. §§78j(b)], and Rules 10b-5 and 15d-14 promulgated thereunder, [17 C.F.R. §§240.10b-5,  240.15d-14], and aided and abetted violations of Sections 13(b)(2)(A), 13(b)(2)(B), and 15(d) of the Exchange Act [15 U.S.C. §§78m(b)(2)(A),

78m(b)(2)(B), 78o(d)], and Rules 15d-1, 15d-11, 15d-13 and 12b-20 promulgated thereunder [17 C.F.R. §§ 240.15d-1, 240.15d-11, 240.15d-13, 240.12b-20].

9.       By engaging in the conduct described in this Complaint, defendant Louis Kelly violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c)].

## JURISDICTION AND VENUE

10.      The Commission brings this action pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and (e)] to enjoin the violative acts, transactions, practices and courses of business alleged herein, and for other appropriate relief.

11.      This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

12.      Defendants, directly or indirectly, made use of the means and instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange in connection with the acts, practices, and courses of business alleged herein.

13.      Defendants can be found and conducted business in, and are inhabitants of and reside in, the Eastern District of Pennsylvania.  Certain of the acts, transactions, practices and courses of business constituting the violations alleged herein occurred within the Eastern District of Pennsylvania.  Venue is appropriate in the Eastern District of Pennsylvania under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and under Section 27 of the Exchange Act [15 U.S.C. §78aa].

## DEFENDANTS

14.     **Tasty Fries, Inc.**, is a Nevada corporation which, at all times relevant to this Complaint, had its principal place of business in Blue Bell, Pennsylvania.  At the time of the conduct alleged in this Complaint, the company was a development stage company with plans to develop a French fry vending machine that could be mass produced.  Tasty Fries common stock was publicly traded under the symbol "TFRY."  Since June 2005, its stock has been quoted on the Pink Sheets.   In 2005, Tasty Fries terminated its employees and ceased most of its operations.  During all times relevant to this Complaint, the company has had in excess of 300 record shareholders and is subject to the reporting obligations of Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

15.     **Edward C. Kelly, Sr.**, age 71, resides in Blue Bell, Pennsylvania.  Edward Kelly has been Tasty Fries' President and Chief Executive Officer from June 1994 through the present, and its Chairman of the Board of Directors from June 1996 through the present.  At all times relevant hereto, he ran all aspects of Tasty Fries' operations, including issuing press releases, soliciting investments in the company, and controlling the company's stock issuances.  In addition, he reviewed and signed Tasty Fries' Forms 10-KSB for the fiscal years ended January 31, 2001, January 31, 2002, January 31, 2003 and January 31, 2004, and signed Tasty Fries' Forms 10-QSB for all of the quarters ended April 30, 2002 through October 31, 2004.

16.     **Louis M. Kelly**, age 42, of Philadelphia, Pennsylvania is defendant Edward Kelly's son.  Between 2000 and June 2005 he worked for Tasty Fries as the operations manager.  He also is an attorney licensed in Pennsylvania, and sometimes acted as counsel for Tasty Fries.

He issued opinion letters permitting Tasty Fries to compensate consultants and advisers with stock, and prepared Tasty Fries' Form S-8 registration statements in connection with those transactions.  Prior to working for Tasty Fries, he did not practice securities law.

### FACTUAL ALLEGATIONS

I.   **Defendants Tasty Fries and Edward Kelly Fraudulently Issued More Shares of Tasty Fries Common Stock Than Were Authorized, and Made False and Misleading Statements in Press Releases and Commission Filings.**

A.   **Since 2001, Tasty Fries and Edward Kelly Have Sold Unauthorized Shares of Tasty Fries Stock, and Made False and Misleading Statements Concerning the Number of Authorized Shares of Tasty Fries Stock.**

17.   Tasty Fries is a development stage company that has not completed its efforts at developing its sole product, a French fry vending machine.  The company never has earned meaningful revenue through sales of its French fry vending machines.  Between 1999 and 2004, the company received going concern opinions from its auditors.

18.   Because the company generated no meaningful revenue during the times relevant hereto, it relied on sales of common stock and warrants to raise money necessary for it to operate. Between 2001 and April 2005, the company continuously offered and sold shares of its common stock.

19.   To continue its stock sales, on five occasions between 1999 and 2005, the company resolved to amend its articles of incorporation to increase its authorized number of shares of common stock.  The company's Board of Directors approved each increase.

20.   In order to effectuate such amendments, in addition to having the Board of Directors approve such increases, the company was required to comply with procedures

6

prescribed by the state of Nevada, its place of incorporation.  Nevada required the company to obtain approval from holders of a majority of the shares of its stock outstanding and to file certain documentation with the state of Nevada.

21.    In 1999, the company amended its articles of incorporation to permit issuance of up to 50 million shares of common stock.  Kelly, with assistance of counsel, handled this process. The company received the approval of shareholders holding a majority of the shares outstanding and, on August 6, 1999, filed the necessary Certificate of Amendment to the Articles of Incorporation of Tasty Fries, Inc. with Nevada.

22.    In March 2001, the company's Board of Directors authorized an increase to the number of authorized shares to 100 million shares.  The company and Edward Kelly never effectuated an amendment to the articles of incorporation in connection with this increase because they never filed with the state of Nevada any documentation demonstrating that the company had received majority shareholder approval to amend its articles of incorporation.  Therefore, the company's articles of incorporation were never amended to permit issuance of shares of common stock above 50 million shares.   Moreover, the company has no records demonstrating that it ever sought or received approval from its shareholders to increase the number of authorized shares of common stock from 50 to 100 million authorized shares.

23.    In May 2001, the company filed a Form 10-KSB/A for the year-ended January 31, 2001, signed by Edward Kelly.  Under Item 1, "Description of Business," the company stated that it had "changed its authorized common shares to 100,000,000."  In the notes to the company's financial statements filed with this Form 10-KSB/A, the company identified as a subsequent event

that "[i]n March, 2001, the Board of Directors authorized an increase in the authorized number of shares."

24.     On or about November 7, 2001, Edward Kelly notified Tasty Fries' transfer agent that the company's number of authorized shares had increased from 50 million shares to 100 million shares, sending the company's transfer agent the board resolution that authorized the increase.  Based on this information, the company's transfer agent changed its records to reflect that the company's number of authorized shares was 100 million shares.

25.     At the time Defendant Edward Kelly signed the company's May 2001 Form 10-KSB/A, and at the time he notified the company's transfer agent of a change to 100 million authorized shares, he knew, or was reckless in not knowing, that the company never amended its articles of incorporation to authorize the issuance of shares in excess of 50 million shares.

26.     Beginning on November 26, 2001, the company began issuing shares of common stock that were not authorized because the issued shares exceeded the company's authorized limit of 50 million shares.

27.     As a result of issuing shares above its authorized limit, the company filed materially misstated Forms 10-KSB and financial statements filed along with its Forms 10-KSB for the years-ended January 31, 2002 and January 31, 2003, and materially misstated Forms 10-QSB and financial statements filed with the Forms 10-QSB for the quarters-ended April 30, 2002, July 31, 2002, October 31, 2002, April 30, 2003, and July 31, 2003.  The balance sheets in these financial statements falsely state that the company had 100 million authorized shares of common stock. Edward Kelly signed these annual and quarterly reports even though he knew or was reckless in

not knowing that the statements in those reports were materially false and misleading.

28.     Thereafter, in 2003, 2004, and 2005, respectively, the company again decided to progressively increase its authorized shares of common stock, first to 150 million shares, then to 200 million shares, and, finally, to 300 million shares.  Pursuant to Nevada law, majority shareholder approval was required for each of those increases.  In each instance, however, Edward Kelly voted shares of common stock that he did not own and for which he was not authorized to vote by proxy.  In connection with at least two of the votes, Kelly also permitted others to vote shares that they did not own and for which they were not authorized to vote by proxy.  In actuality, none of the amendments was properly effectuated because, in each instance, the company did not have the required majority shareholder approval.

29.     Edward Kelly, in his capacity as Tasty Fries' President and Chief Executive Officer, signed Certificates of Amendment for each of the purported share increases in 2003, 2004 and 2005, falsely representing that the respective amendments to the company's articles of incorporation were adopted by a majority vote of the corporation's shareholders in the manner prescribed by Nevada law.  The company filed each of the certificates of amendment with the state of Nevada.

30.     As a result of the company's improper increases in authorized stock in 2003 and 2004, it filed with the Commission materially misstated Forms 10-QSB, together with accompanying financial statements, for the quarters ended October 31, 2003, April 30, 2004, July 31, 2004 and October 31, 2004, and a materially misstated Form 10-KSB, together with accompanying financial statements for the year ended January 31, 2004.  Edward Kelly signed

these reports even though he knew or was reckless in not knowing that the statements in those reports were materially false and misleading.

31.     On March 23, 2005, the company filed with the Commission a Form 8-K that disclosed, inter alia, problems with the way it had conducted the 2003, 2004, and 2005 votes because it did not have majority approval to amend the articles of incorporation to increase the number of authorized shares of common stock.  Based on this information, its auditors informed the company that its accounting for stock issuances was incorrect, the effect was material, and the company should act to prevent future reliance on its audit reports for the years ended January 31, 2003 and January 31, 2004 and its reviews of the interim financial statements included in its Form 10-QSB reports for the quarters ended July 31, 2002, October 31, 2002, April 30, 2003, July 31, 2003, October 31, 2003, April 30, 2004, July 31, 2004, and October 31, 2004.

32.     On April 1, 2005, the company filed a Form 8-K/A that disclosed, inter alia, that it had issued shares in excess of its authorized cap of 50 million shares since the quarter-ended January 31, 2002.  It also disclosed that the company's auditors had concluded that the issuance of such shares comprised material misrepresentations and that the financial statements included in its annual report on Form 10-KSB for the year-ended January 31, 2002 and the quarterly report on Form 10-QSB for the quarter-ended April 30, 2002 also should no longer be relied upon.

33.     On April 13, 2005 the company filed a Form 8-K that disclosed, inter alia, that it had issued more than 128 million shares of common stock and that all shares issued in excess of 50 million shares were void pursuant to Nevada corporate law, that the company had issued all of

its authorized shares on or before November 26, 2001, and that it believed many of the publicly traded shares of common stock were not valid.

34.     Until the company issued these reports in the spring of 2005, the company had falsely represented, inter alia, that it was capable of continuing to raise capital by selling stock, that the shares it was selling were authorized, the amount of its capital, and the number of its authorized shares.

35.     Between 2002 and 2004, Edward Kelly learned from the company's auditors that Tasty Fries failed to keep books and records that accurately reflected its stock issuances and had material weaknesses related to its internal controls.  In 2002, 2003, and 2004, the company's auditors had identified stock issuances as an area of material weakness.  Kelly, nonetheless, conducted the votes in the manner described above, and Tasty Fries and Kelly made the aforementioned misstatements regarding the amendments to the number of authorized shares. The company and Kelly also continued to sell shares of Tasty Fries common stock.

36.     By virtue of selling shares beyond its authorized limit, the company's accounting for its stock issuances was materially incorrect.  Its misstatements include misstated balance sheets, misstated Stockholders' Deficiency sections, and misstated Statements of Changes in Stockholders' Deficiency.  The company's misstatements misled investors because its Statements of Changes in Stockholders' Deficiency reflected capital that the company may not have been able to raise had it disclosed that it was issuing void shares.

37.     As Tasty Fries' Chief Executive Officer and Chief Financial Officer, Edward Kelly certified Tasty Fries' Forms 10-KSB for the years-ended January 31, 2003 and January 31, 2004

and Forms 10-QSB for the quarters-ended April 30, 2003, July 31, 2003, October 31, 2003, April 30, 2004, July 31, 2004, and October 31, 2004.  All of these filings that Edward Kelly certified contained materially misstated financial statements and omitted material information regarding the company's amendments to its articles of incorporation and issuance of shares of common stock beyond the limit provided by the company's articles of incorporation.

38.     As set forth above, during the period March 2001 through 2005, Tasty Fries failed to maintain accurate books and records and failed to implement adequate internal controls.

**B.     Tasty Fries and Edward Kelly Engaged in Fraudulent Conduct by Issuing Press Releases and Commission Filings Containing False and Misleading Statements Concerning the Status of a Vending Machine Under Development and a Contract to Purchase the Machines.**

39.      In 2002, 2003, and 2004, Tasty Fries issued several materially misleading statements in press releases and Commission filings regarding the status of the French fry vending machine's development and a contract to purchase the machines.  The press releases and filings affected the price of Tasty Fries stock and investors' interest in purchasing the stock.

40.     Tasty Fries issued a press release on February 25, 2002 that announced that it had received a purchase order agreement from the company's exclusive sales and marketing agent to manufacture and provide 10,000 state-of-the-art French fry vending machines by 2004.  It also announced that "[d]elivery of production units will commence in July, 2002."  The press release stated that the total value of the order would exceed $100 million, and gave the misleading impression that the company was on the verge of mass producing an operable machine and stood to earn significant revenues.

41.     The February 25, 2002 release failed to mention that:  (1) no prototype of the machine had yet been completed or accepted, which was necessary to trigger the purchaser's obligations under the agreement; (2) the company had never made a production model of the machine; (3) the company had not yet developed specifications for the machine; and (4) a crucial component of the machine needed to be redesigned.  Because the company failed to disclose material information about the circumstances of this purchase order and the status of production, the company's press release was materially misleading.

42.     This press release materially impacted the price of the stock.  On February 25, 2002, the price of Tasty Fries stock increased 30% from the prior trading day.  On the prior trading day, the stock closed at 37 cents per share with a volume of 297,500 shares, and on February 25, 2002, the stock closed at 48 cents per share with a volume of 876,300 shares.

43.     Between March 20, 2002 and March 28, 2002, Edward Kelly sold 185,000 shares and personally profited from this press release by selling Tasty Fries stock after it was issued.  Edward Kelly received $3,475 in unjust profits by selling shares during this time.

44.     Tasty Fries issued a press release dated October 1, 2002 that stated that the company would expand the initial installation sites for its patented French fry vending machines to include Philadelphia, Pennsylvania, and that "with the completion of our production/manufacturing engineering we have taken the steps to mass manufacture a very reliable vending machine."  Because the company and Kelly failed to disclose material information about the status of the machine's development, the company's press release was materially misleading.  At the time the release was issued, Edward Kelly knew that a key feature of the

13

machine was not working to his satisfaction.  Moreover, at this time, the engineering of the machine was not completed.

45.     This press release materially impacted the price of the stock.  On October 1, 2002, the price of Tasty Fries stock increased 13% from the prior trading day.  On the prior trading day, the stock closed at 8 cents per share with a volume of 299,400 shares, and on October 1, 2002, the stock closed at 9 cents per share.

46.     Tasty Fries issued a press release dated June 18, 2003 entitled "Tasty Fries Brings French Fry Vending Machines To Market."  The machines were to incorporate "all of the positive and proven features from our prototype and pre production model."  This release was misleading because the title said that it had brought the machines to market and the text announced that the machines were "coming to market," when, in fact, they were only being displayed at an open house.

47.     This press release materially impacted the price of the stock.  On June 18, 2003, the price of Tasty Fries stock increased 33% from the prior trading day.  On the prior trading day, the stock closed at 27 cents per share with a volume of 194,700 shares, and on June 18, 2003, the stock closed at 36 cents, with a daily high of 38 cents, with a volume of 1,783,500 shares.

48.     Between June 23, 2003 and June 25, 2003, Edward Kelly sold 215,000 shares of Tasty Fries stock and personally profited from this press release by selling Tasty Fries stock after it was issued.  Edward Kelly received $29,450 in unjust profits by selling shares at this time.

49.     Tasty Fries issued a press release dated June 30, 2003 that stated that "[Tasty Fries] hosted an open house on June 25, 2003 at its corporate headquarters in Blue Bell, PA. Over 200 shareholders, private investors, vending machine representatives, and interested parties attended.  The company's production models of its French fry vending machines were on display and served over 150 orders of piping hot Tasty Fries to the patrons."  Because the company and Kelly omitted material information, such as the machines' failed performance, the company's press release was materially misleading.  This release also was misleading because it perpetuated the impression of the June 18, 2003 press release that the machines were completed and ready for production, when, in fact, they were not.

50.     Tasty Fries issued a press release dated August 31, 2004 entitled "Tasty Fries Vending Machines in Production."  The release stated that the manufacturer "has commenced high-volume manufacturing of Tasty Fries French fry vending machines."  The release was false because the company was not producing machines in a large volume.

51.     This press release materially impacted the price of the stock.  The stock price increased by 10% on the day of the release.  On the prior trading day, the stock closed at 10 cents per share with a volume of 10,350 shares, and on the day of the release, the stock closed at 11 cents per share with a volume of 197,422 shares.

52.     The Forms 10-QSB for the quarters ended April 30, 2004, July 31, 2004, and October 31, 2004 contained the statement that "[t]he Company is presently assembling an initial quantity of 250 French fry vending machines at [its manufacturer][.]"  This statement was materially misleading because, although the manufacturer had begun to work on assembly, it was

15

not assembling 250 machines at that time.  At the time Edward Kelly certified these Forms 10-QSB, he knew that the company's manufacturer was not assembling 250 machines.  By 2005, Edward Kelly knew that Tasty Fries only had two such machines completely assembled and only ten, in total, that were being assembled.

53.     Edward Kelly was primarily responsible for the content of Tasty Fries' false and misleading press releases and statements in Commission filings regarding the machines.  He was responsible for the company's production efforts and contracts relating to the machines, and he was familiar with the development and manufacturing status of the machines.  He also was responsible for approving the company's press releases.  He reviewed all of the company's filings and he prepared the portions of the company' filings involving the manufacturing of the machines, which he signed and/or certified.  He knew, or was reckless in not knowing, that statements in Tasty Fries' press releases and Commission filings were materially false and misleading.

## II.     Tasty Fries, Edward Kelly, and Louis Kelly Violated The Registration Provisions of the Securities Act of 1933.

### A.     Tasty Fries, Edward Kelly and Louis Kelly Did Not Effectively Register Sales of S-8 Stock Because They Offered and Sold the Stock in Order to Compensate Impermissible Recipients of S-8 Stock.

54.     A Form S-8 registration statement may only be used to register sales of the issuer's stock to consultants and advisers if:  (i) they are natural persons; (ii) they provide bona fide services to the registrant; and (iii) the services are not in connection with the offer or sale of securities in a capital-raising transaction, and do not directly or indirectly promote or maintain a market for the registrant's securities.

55.     Defendants Tasty Fries and Edward Kelly sold shares of S-8 stock in sales that

were not properly registered because the sales were either to persons who did not provide bona fide services to Tasty Fries, i.e. an attorney who represented an investor in litigation and never provided legal services to Tasty Fries, or persons who conducted activities that either directly or indirectly promoted or maintained a market for Tasty Fries securities.  Edward Kelly negotiated the use of the S-8 stock for these improper purposes.  Although the company and Edward Kelly attempted to register these transactions by filing with the Commission Form S-8 registration statements, the registration statements were ineffective because such transactions may not be registered using Form S-8.

56.     In connection with three of the improper sales, defendant Louis Kelly issued legal opinions that were included as part of Tasty Fries' S-8 registration statements.  The opinions that were included in these S-8 registration statements related to persons who did not provide bona fide services to Tasty Fries and to persons who engaged in activities that directly or indirectly maintained a market for Tasty Fries securities.  In deciding to issue these opinions, Louis Kelly relied on past advice from other attorneys in connection with other issuances of stock that were registered on Form S-8.  He performed no independent research to determine the legality of using Form S-8 to register the sales for which he issued opinions.

57.     Moreover, in connection with one of the sales to an improper recipient for which defendant Louis Kelly wrote the legal opinion, he also instructed the company's transfer agent to issue shares to an impermissible recipient of S-8 stock without a restrictive legend.  He did so by sending a letter to the transfer agent that stated the shares were "free trading" pursuant to an S-8 registration statement filing.

58.     Louis Kelly also completed the Form S-8 registration statements for Tasty Fries and sent them to the company's printer for filing with the Commission.

59.     As a result of the foregoing conduct, Edward Kelly and Louis Kelly were necessary participants and substantial factors in the unregistered offer and sale of Tasty Fries stock.

**B.      Tasty Fries and Edward Kelly Avoided Registering Sales
of Tasty Fries Stock by Conducting "Gypsy Swaps."**

60.     In at least ten transactions, Tasty Fries and Edward Kelly avoided registering the sale of shares by conducting so-called "gypsy swaps" in which they arranged for shareholders to sell shares of purportedly nonrestricted common stock to others. The purportedly nonrestricted stock was originally restricted stock that the shareholders had purchased directly from the company and had held for over one year.  Tasty Fries ultimately received all or some of the purchase price from the sale of the nonrestricted shares, and the selling shareholders received new restricted shares from the company.  In some instances, as an inducement to engage in the transaction, the selling shareholders received "bonus" shares, that is, for every purportedly nonrestricted share the shareholder sold, the shareholder would receive from the company extra shares of restricted stock in return.  Tasty Fries did not file a registration statement with regard to these sales.

**III.**     **Tasty Fries Failed to Make Required Commission Filings.**

61.     Since at least the fiscal year-ended January 31, 2001, Tasty Fries has been subject to the reporting obligations of Section 15(d) of the Exchange Act because it has filed Securities Act registration statements that went effective and has had over 300 shareholders of record.

62.     As mentioned above, all of Tasty Fries' Forms 10-KSB and Forms 10-QSB that it filed with the Commission covering the periods from the fiscal year-ended January 31, 2001 through the quarter-ended October 31, 2004 included materially false and misleading statements, including false and misleading financial statements, false and misleading statements regarding the purported increase in the number of authorized shares, and false and misleading statements regarding the production of machines.

63.     The company has not made its required filings of:  (a) Forms 10-KSB for the years ended January 31, 2005, January 31, 2006, and January 31, 2007; (b) Forms 10-QSB for the quarters ended April 30, 2005, July 31, 2005, October 31, 2005, April 30, 2006, and July 31, 2006, October 31, 2006, and April 30, 2007; and (c) a current report on Form 8-K to announce that its auditor resigned on August 19, 2005.

64.     Defendant Edward Kelly knowingly provided substantial assistance to Tasty Fries in its violations of the reporting requirements of Section 15(d) of the Exchange Act and Rules 15d-1, 15d-11, 15d-13 and 12b-20 promulgated thereunder.  Edward Kelly reviewed and signed the Forms 10-KSB for the years-ended January 31, 2001 through January 31, 2004 and Forms 10-QSB for the quarters-ended January 31, 2002 through October 31, 2004 -- all of which

contained information that Edward Kelly knew to be false and misleading, or was reckless in not knowing was false and misleading, and/or omitted material information.  Also, Edward Kelly caused Tasty Fries to file these false and misleading documents with the Commission.  Moreover, Kelly knew of the requirement to make annual and quarterly filings and of the requirement to disclose the auditor's resignation and he failed to cause Tasty Fries to do either.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder
By Defendants Tasty Fries and Edward Kelly**

65.     The Commission realleges and restates Paragraphs 1 through 64 of this Complaint and incorporates the same by reference as if set forth fully herein.

66.     Defendants Tasty Fries and Edward Kelly, from May 2001 through April 2005, directly or indirectly, singly or in concert with others, by use of the means and instruments of transportation in interstate commerce, or by use of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of securities, have knowingly or recklessly:

      i.    employed devices, schemes or artifices to defraud,

      ii.    made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

      iii.    engaged in acts, practices, or courses of business which operate or would operate as a fraud or deceit upon any person.

67.     By reason of the foregoing, defendants Tasty Fries and Edward Kelly, directly or indirectly, violated and, unless restrained and enjoined, will continue to violate Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder [15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5].

## SECOND CAUSE OF ACTION

### Violations of Section 17(a) of the Securities Act
### By Defendants Tasty Fries and Edward Kelly

68.     The Commission realleges and restates Paragraphs 1 through 67 of this Complaint and incorporates the same by reference as if set forth fully herein.

69.     Defendants Tasty Fries and Edward Kelly, from May 2001 through April 2005, directly or indirectly, in the offer or sale of securities, by the use of the means and instruments of transportation and communication in interstate commerce, and by use of the mails, knowingly or recklessly,

    i.   employed devices, schemes, or artifices to defraud;

    ii.  obtained money or property by means of untrue statements of material fact or omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

    iii.  engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

70.     By reason of the foregoing, Tasty Fries and Edward Kelly, unless restrained and enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. §77(a)].

## THIRD CAUSE OF ACTION

**Violations of Sections 5(a) and 5(c) of the Securities Act
By Defendants Tasty Fries, Edward Kelly, and Louis Kelly**

71.     The Commission realleges and restates paragraphs 1 through 70 of this Complaint and incorporates the same by reference as if set forth fully herein.

72.     Tasty Fries, Edward Kelly, and Louis Kelly, directly or indirectly, singly or in concert with others, offered to sell, sold and delivered after sale, securities, and directly or indirectly, (a) made use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell securities, through the use of written contracts, offering documents  and otherwise, (b) carried and caused to be carried through the mails and in interstate commerce by the means and instruments of transportation, such securities for the purpose of sale and for delivery after sale and (c) made use of the means or instruments of transportation and communication in interstate commerce and of the mails to offer to sell such securities.

73.     With respect to the securities sold by Tasty Fries, Edward Kelly, and Louis Kelly, no appropriate registration statements were filed with the Commission or were in effect at the time of the conduct described herein, and no valid exemption from registration was available.

74.     By reason of the foregoing, Tasty Fries, Edward Kelly and Louis Kelly violated and, unless restrained and enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## FOURTH CAUSE OF ACTION

### Violations of Section 15(d) of the Exchange Act and Rules 15d-1, 15d-11, 15d-13 and 12b-20 thereunder By Defendant Tasty Fries

75.     The Commission realleges and restates paragraphs 1 through 74 of this Complaint and incorporates the same by reference as if set forth fully herein.

76.     Defendant Tasty Fries, by engaging in the conduct described above, failed to file with the Commission required annual, current, and quarterly reports, and filed with the Commission annual and quarterly reports that were materially misleading.

77.     By reason of the foregoing, defendant Tasty Fries violated, and unless restrained and enjoined will continue to violate, Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] and Exchange Act Rules 15d-1, 15d-11, and 15d-13 and 12b-20 promulgated thereunder [17 C.F.R. §§ 240.15d-1, 15d-11, 240.15d-13 and 240.12b-20].

## FIFTH CAUSE OF ACTION

### Violations of Sections 13(b)(2)(A) of the Exchange Act By Defendant Tasty Fries

78.     The Commission realleges and restates paragraphs 1 through 77 of this Complaint and incorporates the same by reference as if set forth fully herein.

79.     Defendant Tasty Fries, by engaging in the conduct described above, failed to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect its transactions and dispositions of the company's assets.

80.     By reason of the foregoing, Tasty Fries violated, and unless restrained and enjoined will continue to violate, Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

## SIXTH CAUSE OF ACTION

### Violations of Section 13(b)(2)(B) of the Exchange Act
### By Defendant Tasty Fries

81.     The Commission realleges and restates paragraphs 1 through 80 of this Complaint and incorporates the same by reference as if set forth fully herein.

82.     Defendant Tasty Fries, by engaging in the conduct described above, failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions are recorded as necessary to permit preparation of financial statements in conformity with GAAP.

83.     By reason of the foregoing, Tasty Fries violated, and unless restrained and enjoined will continue to violate, Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

## SEVENTH CAUSE OF ACTION

### Aiding and Abetting Violations of Section 15(d) of the Exchange Act and
### Rules 15d-1, 15d-11, 15d-13, and 12b-20 thereunder By Defendant Edward Kelly

84.     The Commission realleges and restates paragraphs 1 through 83 of this Complaint and incorporates the same by reference as if set forth fully herein.

85.     Defendant Edward Kelly knowingly provided substantial assistance to Tasty Fries' violations of Section 15(d) and Rules 15d-1, 15d-11, 15d-13, and Rule 12b-20 promulgated thereunder.

86.     By engaging in the foregoing conduct, Edward Kelly aided and abetted Tasty Fries' violations of the reporting requirements of Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], and Rules 15d-1, 15d-11, 15d-13, and 12b-20 promulgated thereunder [17 C.F.R. §§ 240.15d-1, 240.15d-11, 240.15d-13, and 240.12b-20] and, therefore, is liable for such violations pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] and, unless enjoined, will continue to aid and abet such violations.

### EIGHTH CAUSE OF ACTION

**Aiding and Abetting Violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act**
**By Defendant Edward Kelly**

87.     The Commission realleges and restates paragraphs 1 through 86 of this Complaint and incorporates the same by reference as if set forth fully herein.

88.     By reason of the foregoing, defendant Edward Kelly knowingly provided substantial assistance to Tasty Fries' violations of Section 13(b)(2)(A) and Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

89.     By reason of the foregoing, defendant Edward Kelly aided and abetted violations of Section 13(b)(2)(A) and Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(2)(B)] and, therefore, is liable for such violations pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] and, unless enjoined, will continue to aid and abet such

violations.

## NINTH CAUSE OF ACTION

### Violation of Exchange Act Rule 15d-14 By Defendant Edward Kelly

90.     The Commission realleges and restates paragraphs 1 through 89 of this Complaint and incorporates the same by reference as if set forth fully herein.

91.     Defendant Edward Kelly, by engaging in the conduct described above, filed certifications of Tasty Fries' required Commission filings that contained statements that did not satisfy the requirements of Exchange Act Rule 15d-14 [17 C.F.R. § 240.15d-14] because they contained statements that that he knew or was reckless in not knowing contained untrue statements of a material fact or omitted to state material facts necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by the reports.

92.     By reason of the foregoing, Edward Kelly violated, and unless restrained and enjoined, will continue to violate, Exchange Act Rule 15d-14 [17 C.F.R. § 240.15d-14].

WHEREFORE, the Commission, respectfully requests that this Court:

## I.

Issue an order permanently enjoining defendant Tasty Fries from violating Sections 5(a), 5(c) and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)]; Sections 10(b), 13(b)(2)(A), 13(b)(2)(B), and 15(d) of the Exchange Act [15 U.S.C. §§78j(b), 78m(b)(2)(A), 78m(b)(2)(B), and 78o(d)]; and Rules 10b-5, 15d-1, 15d-11, 15d-13, and 12b-20, promulgated thereunder [17 C.F.R. §§240.10b-5, 240.15d-1, 240.15d-11, 240.15d-13, and 240.12b-20].

## II.

Issue an order permanently enjoining defendant Edward Kelly from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), 77q(a)]; Section 10(b) of the Exchange Act [15 U.S.C. §§78j(b)] and Rules 10b-5 and 15d-14 promulgated thereunder, [17 C.F.R. §§240.10b-5 and 240.15d-14]; and aiding and abetting violations of Sections 13(b)(2)(A), 13(b)(2)(B), and 15(d) of the Exchange Act and Rules 15d-1, 15d-11, 15d-13 and 12b-20 promulgated thereunder [15 U.S.C. §§78m(b)(2)(A), 78m(b)(2)(B), 78o(d) and 17 C.F.R. §§ 240.15d-1, 240.15d-11, 240.15d-13, 240.12b-20].

## III.

Issue an order permanently enjoining defendant Louis Kelly from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c)].

## IV.

Issue an order requiring defendant Louis Kelly to pay civil monetary penalties of $19,500 pursuant to Section 20(d)(1) of the Securities Act.

## V.

Issue an order barring Edward Kelly, pursuant to Section 20(e) of the Securities Act, [15 U.S.C. §77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act, or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

**VI.**

Issue an order requiring Edward Kelly to pay disgorgement in the amount of $32,925, plus prejudgment interest thereon in the amount of $6,320.

**VII.**

Issue an order requiring Edward Kelly to surrender shares of Tasty Fries stock for cancellation.

**VIII.**

Enter an order granting such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

_____
            /s

Daniel M. Hawke
Elaine C. Greenberg, PA Bar No. 48040
Amy J. Greer, PA Bar No. 55950
Tami S. Stark
Kingdon Kase, PA Bar No. 37952
Lisa G. Blackburn, PA Bar No. 70809

Attorneys for Plaintiff

**SECURITIES AND EXCHANGE COMMISSION**
Mellon Independence Center
701 Market Street, Suite 2000
Philadelphia, PA  19106
Telephone:  (215) 597-3100
Facsimile:  (215) 597-2740

Dated:  July 12, 2007